Francis E. PERKINS, Trustee in Bankruptcy of Eben S. Upton Co., Inc.

v.

LAKEPORT NATIONAL BANK.

Civ. A. No. 1183.

United States District Court
D. New Hampshire.

July 19, 1955.

Francis E. Perkins, Concord, N. H., pro se.

Devine & Millimet, Joseph A. Millimet, Bartram C. Branch, Manchester, N. H., for plaintiff.

Morse, Hall & Morse, Charles T. Gallagher, Concord, N. H., for defendant.

CONNOR, District Judge.

Action by the trustee in bankruptcy of Eben S. Upton Co., Inc. against the Lakeport National Bank to recover an alleged preferential transfer, under Section 60 of the Bankruptcy Act, 11 U.S.C.A. § 96.

The essential facts are not in dispute and are as follows: On August 22, 1949, the bankrupt, a corporation engaged in the plumbing and heating business and operating a store in Meredith, New Hampshire, obtained a loan in the amount of $11,000 from the defendant. In order to secure this advance, the parties executed a factor's lien agreement as authorized by and in accordance with Chapter 161 of New Hampshire Laws of 1943, as amended. The provisions of

law regarding notice were complied with. After giving effect to several payments on the loan, there remained a balance in the sum of $9,873.63 as of the time the bank asserted possession. The bank decided to enforce its lien when it appeared that its margin of security was less than that specified in the agreement. It was the understanding of the bankrupt and of the bank that the bank's lien extended to all the bankrupt's property, and the bankrupt turned over the keys of the business establishment to an officer of the bank. On August 29, 1950, the bank by indenture appointed one Lamprey as its agent and trustee "to conduct an immediate sale of such articles and property of Eben S. Upton Co., Inc., subject to the said factoring agreement, including * * * the right to sell * * * said property at public or private sale * * * and apply the proceeds * * * to the payment of the indebtedness * * *." Appropriate notices were posted in the town hall and on the bankrupt's premises, conformably with the requirements of law.

In discharge of his undertaking, Lamprey took possession of the bankrupt's store, erected a sign to the effect that a closing-out sale was being conducted, and proceeded to liquidate. Two of the principal officers of the bankrupt were present during the liquidation and assisted Lamprey. The proceeds of the daily operations were deposited in a special account in his name as "Trustee for the Lakeport National Bank." Current expenses were met and detailed records of all transactions were kept. By December 6, 1950, sufficient funds had been accumulated to meet the outstanding balance, and Lamprey drew two checks in favor of the bank for the balance due and interest to date. Thereupon the bank discharged him of his trusteeship. The bankrupt never resumed operation, and on February 27, 1951, three creditors petitioned it into bankruptcy, adjudication following shortly thereafter.

The plaintiff concedes that a valid lien was created on the articles specifically mentioned in the factoring agreement, but contends that such assets as accounts receivable, bottled gas deposit, equipment and certain merchandise which were liquidated by Lamprey were not subject to the lien. It is urged that the transfer of the proceeds from the liquidation of such assets, in the amount of $8,809.65, was a voidable preference, and that such transfer was not perfected until Lamprey transferred the accumulated funds to the bank on December 6, 1950, which was within the four months period.

The defendant contends that the accounts receivable were subject to the lien and that the plaintiff has not sustained the burden of establishing that the bank's action had the effect of depleting the estate.

The paramount issue is to what extent the lien comprehended the assets of the bankrupt, and particularly whether the accounts receivable were included. The lien agreement leaves much to be desired in the way of draftsmanship, but it is my view and I so find that the instrument fairly construed warrants the conclusion that it was the intention of the parties that a lien be created on the accounts receivable.

The secondary question in respect to this item is whether the reference in the lien agreement included the proceeds resulting from the sale of merchandise which was not subject to the lien. The intention of the parties must be sought from the language of the instrument, and while the reference in the context is in a measure ambiguous, due regard must be given to the employment of the descriptive term "all" which is found at least twice in the lien itself and once in the posted notice. I conclude therefore that all accounts receivable were subject to the lien.

The lien covered fresh stock of the bankrupt's start in business, and the reference therein to accounts receivable was of those in futuro. To acquire a legal lien on these accounts required compliance with Section 5, Chapter 161 of the New Hampshire Laws of 1943, as

amended. It appears that the bank notified the account debtors, thus validating the lien. Hence the lien was perfected more than four months prior to the filing of the bankruptcy petition.

■ The contention of the plaintiff is that the transfer by Lamprey on December 6, 1950, of the accumulated funds created a preference. Lamprey was acting as agent for the bank, and whatever funds he acquired he deposited in the bank under his name as trustee. The funds were the bank's funds, not subject to attachment by the bankrupt's creditors. The fact that these accumulated funds were transferred to the bank within the four-month period was nothing more than a bookkeeping transaction and affected in no way the title of the funds in the first instance.

■ There yet remains for consideration Lamprey's disposition of certain items within the four-month period while he was still in possession. These are bottled gas deposit in the sum of $2,060.20, the sale of an adding machine for the sum of $65, the collection of a $10 rebate from the White Mountain Power Co., a total of $2,135.20.

To constitute a preference, the essential inquiry is—was the estate depleted? Lamprey covered the foregoing items into his account in carrying out his directive to reduce the indebtedness owed to the bank. The assets of the estate include certain accounts receivable which were available to the bank under its lien agreement, but collection of which has not been undertaken. The sum total of these is not clear. Lamprey testified that they were in the amount of $3,045.52, while the schedules of the bankrupt reveal the amount to be $1,997.74, but the latter figure will suffice for the purpose of determining this issue. Additionally, it has been established through an appraisal authorized by the Bankruptcy Court that the wholesale value of the remaining merchandise is in the sum of $1,754.63, 75% of which was conceded-

ly covered by the lien. In the light of the foregoing, I find that the estate has not been depleted.

Accordingly, judgment for the defendant will be entered.